*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IIP-MI 4 LLC and LIVWELL MICHIGAN LLC,

Petitioners-Appellees,

v

CITY OF WARREN,

Respondent-Appellant.

UNPUBLISHED
January 22, 2026
2:38 PM

No. 373070
Tax Tribunal
LC No. 24-000081

Before: KOROBKIN, P.J., and MURRAY and MALDONADO, JJ.

KOROBKIN, P.J. (*dissenting*).

I respectfully dissent. I would hold that the Tax Tribunal had jurisdiction, on statutory grounds or alternatively because respondent's notice violated petitioners' right to due process. Further, I agree with the Tax Tribunal that petitioners' licensed use of their property to grow marijuana entitles them to a qualified agricultural exemption. Accordingly, I would affirm.

I. TAX TRIBUNAL JURISDICTION

A. STATUTORY GROUNDS

The jurisdiction of the Tax Tribunal is defined by statute. MCL 205.731; MCL 205.735a. As our Supreme Court recently explained:

> The Legislature has clearly mandated that the requirement for appeal in the [Tax Tribunal] under MCL 205.735a(3) is jurisdictional. The statute plainly states that "the assessment *must* be protested *before* the board of review before the tribunal *acquires jurisdiction* of the dispute." MCL 205.735a(3) (emphasis added). As a result, MCL 205.735a(3) "is not a notice statute, but is a jurisdictional statute that governs when and how a petitioner invokes the Tax Tribunal's jurisdiction." *Electronic Data Sys Corp v Twp of Flint*, 253 Mich App 538, 542; 656 NW2d 215 (2002). [*Sixarp, LLC v Byron Twp*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166190); slip op at 15.]

For our purposes, the more specific provision of MCL 205.735a is subsection (5), which contains a similar jurisdictional requirement that the taxpayer go first to the board of review:

> For a dispute regarding a determination of a claim of exemption of a principal residence or qualified agricultural property for a year in which the July or December board of review has authority to determine a claim of exemption for a principal residence or qualified agricultural property, the claim of exemption shall be presented to *either* the July or December board of review before the tribunal acquires jurisdiction of the dispute. . . . [MCL 205.735a(5) (emphasis added).]

Thus, for the Tax Tribunal to have jurisdiction to decide a claim of exemption for qualified agricultural property, the claim must be presented to the board of review—"either" at its July meeting or its December meeting. *Id.*

In this case, petitioners presented their claim to the December board of review before appealing to the Tax Tribunal. I conclude, therefore, that the Tax Tribunal had jurisdiction.

Respondent, seeing things differently, points to MCL 211.7ee(6). That statutory subsection provides as follows:

> An owner of property that is qualified agricultural property on May 1 for which an exemption was not on the tax roll may file an appeal with the July or December board of review in the year the exemption was claimed or the immediately succeeding year. An owner of property that is qualified agricultural property on May 1 for which an exemption was denied by the assessor in the year the affidavit was filed, may file an appeal with the July board of review for summer taxes or, if there is not a summer levy of school operating taxes, with the December board of review.

Here, petitioners were denied an exemption by the assessor in the year their affidavit was filed, and in Warren, there is a summer tax levy, so respondent argues that the second sentence in MCL 211.7ee(6) governs this situation and petitioners were required to present their claim to the July board of review. Petitioners waited until the December board of review to appeal, which, respondent argues, was too late.

The problem with respondent's argument is that MCL 211.7ee(6) says nothing about the *jurisdiction* of the Tax Tribunal; at most, it merely says when a taxpayer must present their claim to the board of review. And MCL 205.735a(5), which does set forth jurisdictional requirements for appeals to the Tax Tribunal, does not specify to which board of review the taxpayer must first present their claim; it says that "either" one will do. Therefore, whatever MCL 211.7ee(6) might be saying about when a taxpayer in petitioners' position should present their claim to a board of review, its requirements do not appear to limit the jurisdiction of the Tax Tribunal.

Respondent turns back to MCL 205.735a(5) and says that this statute limits the Tax Tribunal's jurisdiction to appeals from "the July or December board of review" with "*authority* to determine a claim of exemption . . . ." *Id.* (emphasis added). Since only the July board of review had such "authority" to determine petitioners' claim under MCL 211.7ee(6), respondent argues,

presenting that claim to that board of review was a jurisdictional prerequisite to a Tax Tribunal appeal.

But this argument quotes only a portion of the relevant sentence from the statute, thereby distorting its meaning. The complete sentence reads as follows:

> For a dispute regarding a determination of a claim of exemption of a principal residence or qualified agricultural property *for a year in which the July or December board of review has authority* to determine a claim of exemption for a principal residence or qualified agricultural property, the claim of exemption shall be presented to *either* the July or December board of review before the tribunal acquires jurisdiction of the dispute. . . . [MCL 205.735a(5) (emphasis added).]

As shown above, the focus of the statute is not on which *month's* board of review "has authority," it is whether the claim is being sought in "a year" in which a board of review has authority. *Id*. In this case, there is no dispute that petitioners were seeking an exemption for the same year in which a board of review had authority to determine the claim. Therefore, the relevant jurisdictional requirement was that they present their claim to "either" the July or December board of review before appealing to the Tax Tribunal. *Id*. Petitioners presented their claim in December, so the Tax Tribunal had jurisdiction.

One might wonder what the point is of MCL 211.7ee(6)'s second sentence—which respondent contends required petitioners to go to the July board of review—if it does not limit the jurisdiction of the Tax Tribunal. The answer lies in the distinction between a "mandatory claims-processing rule" and a requirement that is truly "jurisdictional." *Mich Farm Bureau v Dep't of Environment, Great Lakes & Energy*, 515 Mich 481, 514 n 25; ___ NW3d ___ (2024). Nonjurisdictional claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Santos-Zacaria v Garland*, 598 US 411, 416; 143 S Ct 1103; 215 L Ed 2d 375 (2023) (cleaned up), quoted in *Mich Farm Bureau*, 515 Mich at 514 n 25. Filing deadlines and exhaustion requirements are "quintessential" claim-processing rules. *Henderson ex rel Henderson v Shinseki*, 562 US 428, 435; 131 S Ct 1197; 179 L Ed 2d 159 (2011); *Santos-Zacaria*, 598 US at 417. Such requirements "may be unalterable on a party's application but can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Eberhart v United States*, 546 US 12, 15; 126 S Ct 403; 163 L Ed 2d 14 (2005) (cleaned up). Jurisdictional limitations, by contrast, can be raised at any time and must be enforced by courts (sua sponte, if necessary) "even in the face of a litigant's forfeiture or waiver." *Santos-Zacaria*, 598 US at 416. Recognizing that "[h]arsh consequences attend the jurisdictional brand," *id*. (cleaned up), the United States Supreme Court has adopted a "clear-statement rule," *id*. at 416-417, to distinguish claim-processing rules from jurisdictional requirements:

> If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character. [*Arbaugh v Y&H Corp*, 546 US 500, 515-516; 126 S Ct 1235; 163 L Ed 2d 1097 (2006) (footnote and citation omitted).]

I would apply the above principles to our case.[1] To the extent that the second sentence of MCL 211.7ee(6) requires taxpayers in petitioners' position to go to the July board of review rather than the December board of review, our Legislature has not "clearly state[d]" that this requirement is jurisdictional. *Arbaugh*, 546 US at 515. Therefore, we should treat it as a nonjurisdictional claim-processing rule. *Id.* at 516.

As stated, nonjurisdictional claim-processing rules can be forfeited "if the party asserting the rule waits too long to raise the point." *Fort Bend Co, Tex v Davis*, 587 US 541, 549; 139 S Ct 1843; 204 L Ed 2d 116 (2019) (cleaned up). In my view, that's what happened here. When petitioners presented their claim to the December board of review, respondent did not invoke MCL 211.7ee(6) or otherwise object that petitioners' claim was untimely. The board of review considered petitioners' claim on its merits and issued the following notice of its action: "DENIED – DOES NOT *QUALIFY* FOR AGRICULTURAL EXEMPTION" (emphasis added). There is no dispute that petitioners, at that point, timely appealed to the Tax Tribunal. MCL 205.762a(3) ("An appeal of a final determination of a claim for exemption of qualified agricultural property . . . shall be filed not later than 30 days after the July or December board of review determines a claim for exemption."). Thus, the December board of review's final determination—a denial of petitioners' claim on its merits and without reference to any requirement regarding the July board of review— allowed petitioners to proceed as they did to the Tax Tribunal for review of that decision.

Nonjurisdictional claim-processing rules may also yield to "equitable considerations." See *United States v Wong*, 575 US 402, 409-410; 135 S Ct 1625; 191 L Ed 2d 533 (2015). One such consideration here, discussed in more detail below, is that respondent's notice to petitioners that their claim for an exemption was denied specifically stated that they could appeal the denial "to the July *or* December Board of Review . . . " (emphasis added). "A defendant who through misleading representations or otherwise prevents the plaintiff from suing in time will be estopped to plead the statute of limitations. This is equitable estoppel." *Miller v Runyon*, 77 F3d 189, 191 (CA 7, 1996).[2] Respondent told petitioners that they could appeal to the July or December board of review, and petitioners chose December. As MCL 211.7ee(6) is nonjurisdictional, equitable considerations allowed petitioners' appeal to the Tax Tribunal to proceed.

B.  DUE PROCESS

Even if respondent's statutory argument as to the Tax Tribunal's jurisdiction were correct, "the statutes at issue here cannot be construed," or applied, "in a manner that would deny petitioner[s] due process of law." *Highland-Howell Dev Co, LLC v Marion Twp*, 478 Mich 932, 933 (2007), cited in *Sixarp*, ___ Mich at ___; slip op at 15. Thus, when the Tax Tribunal would otherwise lack jurisdiction under the applicable statute, the statutory requirement may "be waived

---

[1] Our Supreme Court has "caution[ed] courts to exercise reasoned judgment before branding an exhaustion-of-administrative-remedies requirement jurisdictional." *Mich Farm Bureau*, 515 Mich at 514 n 25.

[2] "Although this Court is not bound by decisions of federal courts or courts of other states, we may consider them persuasive." *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 496 n 2; 892 NW2d 467 (2016).

by the court if necessary to remedy a constitutional due-process violation that deprived the taxpayer of their ability to" seek relief. *Sixarp*, ___ Mich at ___; slip op at 15. This includes situations in which an assessor or board of review fails to provide the taxpayer with constitutionally adequate notice of their right to appeal an adverse determination. See *Spranger v City of Warren*, 308 Mich App 477, 483-485; 865 NW2d 52 (2014); *Sixarp*, ___ Mich at ___; slip op at 15-16. I agree with petitioners that the notice employed by respondent did not meet constitutional requirements.

Respondent, in arguing that its notice to petitioners complied with due process, highlights our Supreme Court's recent decision in *Sixarp*, which, like this case, involved a taxpayer's due-process challenge to the adequacy of notice regarding the requirements for appealing a tax assessor's denial of a claimed exemption to the local board of review. *Sixarp*, ___ Mich at ___; slip op at 16-24. In *Sixarp*, the assessor's exemption denial notice advised that the taxpayer could appeal the denial to the March board of review and that doing so was required to preserve its ability to appeal to the Tax Tribunal. *Id*. at ___; slip op at 2-3, 20. The Court in *Sixarp* rejected the taxpayer's argument that the notice was constitutionally defective because it did not specifically include detailed information about the March board of review's meeting dates and times, noting that the taxpayer had received actual notice about the pertinent deadlines from a separate notice of assessment. *Id*. at ___; slip op at 21, 23. These efforts, the Court concluded, were "reasonably calculated, under all the circumstances, to apprise [the taxpayer] of the appeal process and to afford them an opportunity to present their objections." *Sixarp*, ___ Mich at ___; slip op at 23 (cleaned up). That the denial notice "*could have* included more detailed information about when the [board of review] would meet" did not amount to a due process violation. *Id*. at ___; slip op at 20.

*Sixarp* is distinguishable from this case. The Court there was careful to note that all the information provided to the taxpayer "was *accurate* (if less than complete)." *Id*. at ___; slip op at 23 (emphasis added). By contrast, our caselaw is clear that when a constitutionally required notice is inaccurate or misleading, it violates due process. See *Vicencio v Ramirez*, 211 Mich App 501, 505; 536 NW2d 280 (1995) (holding that "notice must be worded in a manner that would not mislead its recipient in deciding how to respond to the notice given"); *Alan v Wayne Co*, 388 Mich 210, 353; 200 NW2d 628 (1972) (holding that "to comport with due process the notice . . . must not make any misleading or untrue statement").

In this case, I would characterize the notice accompanying the assessor's denial as not merely "less than complete," as in *Sixarp*, ___ Mich at ___; slip op at 23; it was affirmatively misleading. The notice stated the following:

**Notification of Taxpayer's Right of Appeal**

A taxpayer who timely and properly filed Form 2599 may appeal an assessor's denial of the Qualified Agricultural Property Exemption for the 2023 assessment year *to the July or December Board of Review* under MCL 211.ee [sic].

Board of Review denials are appealed to the Michigan Tax Tribunal by filing a petition within 35 days of the Board's action. [Emphasis added.]

But now, respondent contends that petitioners could appeal *only* to the July board of review, not "the July *or* December" board of review. So respondent's notice was inaccurate and misleading—and petitioners were, in fact, misled.

Respondent argues that the notice was clear because it referred the taxpayer to the relevant statute, MCL 211.7ee, and that statute, in turn, explains that appeals must be filed with the July board of review. But there are two problems with this argument. First, the record reflects that respondent's notice contains a typographical error and does not actually cite the statute; it states that a taxpayer may appeal under "MCL 211.ee," which does not exist. Second, MCL 211.7ee itself is not exactly clear on this issue. Subsection (6) of the statute states:

> An owner of property that is qualified agricultural property on May 1 for which an exemption was not on the tax roll may file an appeal with the July or December board of review in the year the exemption was claimed or the immediately succeeding year. An owner of property that is qualified agricultural property on May 1 for which an exemption was denied by the assessor in the year the affidavit was filed, may file an appeal with the July board of review for summer taxes or, if there is not a summer levy of school operating taxes, with the December board of review. [MCL 211.7ee(6).]

The first sentence of the statute states that the property owner "may file an appeal with the July or December board of review." *Id*. And this first sentence applies in a broad sense to petitioners, as no exemption was on the tax roll for their property. It is only the second sentence, which is more specific than the first because it refers to an exemption being denied by the assessor in the year the affidavit was filed, that indicates (but does not explicitly state) that an appeal may be filed only with the July board of review if there is a summer levy of school operating taxes. As a practical matter, a reasonable taxpayer who receives a notice stating that they may appeal "to the July or December Board of Review," with a citation to MCL 211.7ee,[3] would naturally link that statement to the first sentence of MCL 211.7ee, not the second. Thus, I do not think that respondent's notice to petitioners was " 'reasonably calculated, *under all the circumstances*, to apprise' " petitioners that they could appeal only to the July board of review, and not to the December board of review. *Sixarp*, ___ Mich at ___; slip op at 18 (emphasis added), quoting *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950). Or, put another way, I do not think that "one who actually desires to inform the interested parties" that they must appeal in July, and cannot do so in December, "might reasonably employ" this form of a notice, which expressly advises the recipient that they may appeal in July *or* December. *Sixarp*, ___ Mich at ___; slip op at 18 (cleaned up).

Respondent also argues that it would be excessively burdensome on the municipality to tailor their notices to each individual taxpayer, so it is reasonable to use "standard forms" to provide generalized information about appeals and leave it to the recipient to consult the relevant statute for more specific information. But respondent's argument is undermined by the record evidence here. Respondent's notice was on City of Warren letterhead, and under the heading

---

[3] Again, the record shows that the actual notice cites to "MCL 211.ee," so this assumes petitioners could discern that MCL 211.7ee was intended.

"Notification of Taxpayer's Right of Appeal," the notice specifically references "an assessor's denial of the Qualified Agricultural Property Exemption for the 2023 assessment year." Thus, the notice was already tailored to a specific city, year, and type of exemption, and respondent knew that there would be a summer levy of school operating taxes. Therefore, notifying the taxpayer that they may appeal only to the July board of review (and not the December board of review) would entail no additional administrative expense or inconvenience. Cf. *Mathews v Eldridge*, 424 US 319, 335; 96 S Ct 893; 47 L Ed 2d 18 (1976) (requiring consideration of "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail"), quoted in *Sixarp*, ___ Mich at ___ n 16; slip op at 18 n 16.

Due process is about fundamental fairness. *Sixarp*, ___ Mich at ___; slip op at 17. In my view, it is fundamentally unfair for the government to provide notice that an appeal is available in July or December, along with an incorrect citation to a statute that could also easily be read as allowing an appeal in July or December, if in reality an appeal may be presented only in July and a December appeal is too late. That is, by and large, what happened here. Accordingly, I would waive any jurisdictional requirement that petitioners appeal to the July board of review and affirm the Tax Tribunal's exercise of jurisdiction over petitioners' appeal to remedy the due process violation caused by respondent's defective notice. See *Sixarp*, ___ Mich at ___; slip op at 15-16.

## II. QUALIFIED AGRICULTURAL EXEMPTION

Moving to the merits, I agree with the Tax Tribunal that petitioners' licensed use of their property to grow marijuana entitles them to a qualified agricultural exemption under MCL 211.7ee.[4]

"Absent fraud, our review of a decision by the [Tax Tribunal] is limited to determining whether [it] erred in applying the law or adopting a wrong legal principle." *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 438; 716 NW2d 247 (2006). "[T]he factual findings of the [Tax Tribunal] are final, provided that they are supported by competent and substantial evidence." *President Inn Props, LLC v Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011) (cleaned up). Substantial evidence is "any evidence that reasonable minds would accept as sufficient to support the decision," and "it may be substantially less than a preponderance of the evidence." *Blake's Farm, Inc v Armada Twp*, ___ Mich App ___, ___; ___ NW3d ___ (Docket Nos. 371397, 371398); slip op at 2 (cleaned up). "The central dispute in this case involves the proper interpretation and application of [statutes], which is a question of law that this Court reviews de novo." *VanderWerp v Plainfield Charter Twp*, 278 Mich App 624, 627; 752 NW2d 479 (2008).

> When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and

---

[4] The majority does not reach this issue because it concludes that the Tax Tribunal did not have jurisdiction and respondent's notice did not violate due process. Because I disagree with the majority on those two points, I must reach the merits to opine as to how respondent's appeal should be resolved.

unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent. [*Samona v City of Eastpointe*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 366648); slip op at 9 (cleaned up).]

Under MCL 211.7ee(1), "qualified agricultural property" is exempt from certain property taxes under the General Property Tax Act (GPTA), MCL 211.1 *et seq*. "Qualified agricultural property" for purposes of that exemption includes "unoccupied property and related buildings located on that property devoted primarily to agricultural use as defined in . . . MCL 324.36101." MCL 211.7dd(d). And MCL 324.36101 defines "agricultural use" to mean

the production of plants and animals useful to humans, including forages and sod crops; grains, feed crops, and field crops; dairy and dairy products; poultry and poultry products; livestock, including breeding and grazing of cattle, swine, captive cervidae, and similar animals; berries; herbs; flowers; seeds; grasses; nursery stock; fruits; vegetables; maple syrup production; Christmas trees; and other similar uses and activities. [MCL 324.36101(b).]

Applying that definition here, petitioners' use of their property is devoted primarily to "the production of plants . . . useful to humans." *Id*. It can hardly be denied that marijuana is a plant. Additionally, the Tax Tribunal found that petitioners' property is primarily devoted to producing it, a finding that is supported by competent and substantial evidence. See *President Inn Props*, 291 Mich App at 631. And, although marijuana remains somewhat controversial, it is "useful to humans," as required by MCL 324.36101(b). Petitioners are licensed by the state to produce marijuana for medical use, and in the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*., "[t]he people of the State of Michigan [found] and declare[d] that . . . [m]odern medical research . . . has discovered beneficial uses for marihuana in treating or alleviating the pain, nausea, and other symptoms associated with a variety of debilitating medical conditions." MCL 333.26422(a). Petitioners are also licensed to produce marijuana for nonmedical use, the purposes of which, according to the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*., include "remov[ing] the commercial production and distribution of marihuana from the illicit market; prevent[ing] revenue generated from commerce in marihuana from going to criminal enterprises or gangs; . . . [and] ensur[ing] the safety of marihuana and marihuana-infused products . . . ." MCL 333.27952. Therefore, applying the clear and unambiguous statutory text of MCL 211.7ee(1), MCL 211.7dd(d), and MCL 324.36101(b), see *Samona*, ___ Mich App at ___; slip op at 9, petitioners' property is devoted primarily to agricultural use, entitling them to a qualified agricultural exemption.

Respondent, disagreeing with the Tax Tribunal, argues that marijuana production is not agricultural use because marijuana is not explicitly enumerated in MCL 324.36101(b). Although "[a] tax exemption for real or personal property under the GPTA is available only when the Legislature *expressly* exempts that property from taxation," *Campbell v Dep't of Treasury*, 509 Mich 230, 241; 984 NW2d 13 (2022), citing MCL 211.1, the Legislature in MCL 324.36101(b) expressly included "plants," and marijuana is a plant. The specific type of plant or animal need

-8-

not appear on the nonexclusive list of plants and animals in MCL 324.36101(b) for the qualified agricultural exemption to apply.

Respondent also argues that petitioners are not entitled to an exemption because producing marijuana is a commercial activity. MCL 211.7dd(d) states: "Property used for commercial storage, commercial processing, commercial distribution, commercial marketing, or commercial shipping operations or other commercial or industrial purposes is not qualified agricultural property." The MRTMA, in turn, describes its licensing system as one "to control the commercial production and distribution of marihuana . . . ." MCL 333.27952. Similarly, the Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.27101 *et seq.*, describes its licensees as "commercial entit[ies]." MCL 333.27102.

This argument falls short, for two reasons. First, the statutory definitions in the MRTMA and MMFLA are limited to their use in those acts. See *Blake's Farm*, ___ Mich at ___ n 2; slip op at 5 n 2 (rejecting suggestion that a definition of "commercial purpose" elsewhere in the GPTA applies to qualified agricultural property in MCL 211.7dd(d)). And second, the use of the term "commercial" in the GPTA must be understood in the context of the act as a whole. See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009) ("Individual words and phrases, while important, should be read in the context of the entire legislative scheme. While defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme.") (footnote omitted). Broadly speaking, nearly all agricultural use has some commercial "purpose" in the sense that practically all the crops, dairy products, cattle breeding, nursery stock, and other products and activities listed in MCL 234.36101(d) are eventually destined for use in commerce. But if property used for all such products and activities were deemed "not qualified agricultural property," MCL 211.7dd(d), virtually no property would qualify.

Instead, a fair reading of MCL 211.7dd(d) is that the Legislature intended to exclude only those postproduction or ancillary activities involved in the agricultural product's transition into the commercial marketplace. In *Blake's Farm*, for example, the portion of the petitioner's apple-orchard property used for a restaurant, gift shop, event space, and related uses was deemed commercial, while the portion of the property used to grow apples—which, presumably, were also eventually sold in commerce—remained exempt as qualified agricultural property. See *Blake's Farm*, ___ Mich App at ___; slip op at 1-2, 5-6. Similarly, in the present case, the Tax Tribunal granted petitioners only an 80% exemption, as 20% of the property was used for nonagricultural purposes such as processing, storing, and packaging marijuana to prepare for shipment.[5] See MCL 211.7dd(d) ("An owner shall not receive an exemption for that *portion* of . . . the property that is used for a commercial or industrial purpose . . . .") (emphasis added). Petitioners' use of property to grow marijuana is not excluded from the qualified agricultural exemption merely because the end product eventually enters a commercial marketplace.[6]

---

[5] No portion of petitioners' property was used for retail operations.

[6] Also instructive is the State Tax Commission's *Qualified Agricultural Property Exemption Guidelines* (August 2018), which states that property used for "raising horses for sale" qualifies

Lastly, respondent argues that providing a tax exemption for property used to produce marijuana would contravene one of the MRTMA's purposes—to subject marijuana to taxation. As its name reflects, one purpose of the MRTMA is to create a system that taxes marijuana-related businesses. MCL 333.27952. But the MRTMA specifically provides only for an *excise* tax on marijuana. MCL 333.27963. The MRTMA is silent as to property taxes, and we may not "read into" the MRTMA what was not within the electorate's intent "as derived from the language of the statute." *AFSCME v Detroit*, 468 Mich 388, 400; 662 NW2d 695 (2003).[7] Given that silence, we must apply and enforce the clear and unambiguous language of the GPTA as written, which provides for a qualified agricultural exemption—the statutory definition of which includes petitioners' licensed use of their property to produce marijuana. The Tax Tribunal therefore did not err in determining that petitioners are entitled to the exemption as set forth in its opinion and judgment.

### III. CONCLUSION

For the reasons stated, I would affirm the judgment of the Tax Tribunal because (a) it had jurisdiction, on statutory grounds or alternatively as required by due process, and (b) petitioners are entitled to a qualified agricultural exemption. Accordingly, I respectfully dissent.

/s/ Daniel S. Korobkin

---

for the exemption. *Id*., p 4. A state agency's guidance is not binding on courts and cannot conflict with the plain meaning of the relevant statute, but it is entitled to respectful consideration, should not be rejected without cogent reasons, and can aid our interpretation and application of the law. See *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 93, 103; 754 NW2d 259 (2008).

[7] "The intent of the electors governs the interpretation of voter-initiated statutes" such as the MRTMA, "just as the intent of the Legislature governs the interpretation of legislatively enacted statutes." *State v McQueen*, 493 Mich 135, 147; 828 NW2d 644 (2013) (cleaned up). "[T]he plain language of the statute . . . provides the most reliable evidence of the electors' intent." *Cannarbor Inc v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 370919); slip op at 5 (cleaned up).