# STATE OF MICHIGAN

# COURT OF APPEALS

WEINGARTZ SUPPLY COMPANY,

Plaintiff-Appellant,

v

SALSCO INC,

Defendant-Appellee.

FOR PUBLICATION
April 9, 2015
9:00 a.m.

No. 317758
Oakland Circuit Court
LC No. 2012-130602-CZ

Before: MURRAY, P.J., and SAAD and K. F. KELLY, JJ.

SAAD, J.

Plaintiff appeals the trial court's order that granted defendant summary disposition under MCR 2.116(C)(10).[1] For the reasons stated below, we affirm.

## I. INTRODUCTION

This case requires us to interpret a section of a statute that has not been fully interpreted in a published Michigan decision. The statute involved, the Farm and Utility Equipment Act (FUEA), MCL 445.1451, *et seq.*, regulates interactions between manufacturers and wholesalers that sell farm utility equipment to other businesses (which the statute labels "suppliers"), and businesses that sell farm utility equipment directly to consumers (which the statute labels "dealers"). The FUEA is designed to assist dealers of farm utility equipment, and it provides certain rights and remedies dealers may invoke and use against suppliers. However, a dealer cannot invoke the rights and remedies provided by FUEA unless its contractual relationship with its supplier has been terminated. Accordingly, this threshold matter—whether an agreement has been terminated—determines whether a dealer can seek a remedy against a supplier under FUEA.

The question presented in this case relates to the *method* by which a dealer may terminate an agreement with a supplier, before it seeks a remedy under FUEA: namely, whether the dealer

---

[1] More precisely, the trial court granted defendant's motion for reconsideration on the court's earlier denial of defendant's motion for summary disposition—which had the effect of granting defendant summary disposition.

-1-

must terminate its agreement with a supplier via certified mail. Plaintiff, a dealer of utility equipment, claims that FUEA makes termination by certified mail optional, and that a dealer is able to terminate the agreement with its supplier in other ways and still invoke the remedies listed in the statute. Defendant, a supplier of utility equipment, argues that FUEA requires a dealer to terminate an agreement by certified mail before it seeks a remedy under FUEA.

Because the plain language of FUEA explicitly mandates that a dealer must terminate its agreement with a supplier via certified mail before it can seek a remedy under the statute, we reject plaintiff's argument and affirm the trial court's grant of summary disposition to defendant.

## II. FACTS AND PROCEDURAL HISTORY

### A. FACTUAL BACKGROUND

Plaintiff Weingartz Supply Company (Weingartz) is a retail store that sells and services grounds-maintenance equipment. Defendant Salsco, Inc. (Salsco) is a manufacturer that makes lawn rollers used to smooth and level terrain on golf courses.[2] In 2006, Weingartz contacted Salsco and ordered a number of rollers for its store. The parties did business for the next five years, and Weingartz ordered a total of twenty rollers during the course of the relationship. Weingartz sold twelve of these rollers, and kept replacement parts for Salsco's rollers on hand for maintenance purposes.

However, the golf-products industry began to decline during the financial crisis, and Weingartz stopped selling golf-related equipment as a result. In summer 2011, one of Weingartz's major shareholders and employees called an employee of Salsco to inform her that Weingartz would no longer sell Salsco's products, and that it wanted to return the inventory of those products it still possessed. The Salsco employee asked Weingartz to send her a copy of its inventory, which at the time included eight rollers (worth approximately $80,000) and replacement parts for the rollers (worth approximately $4,000 to $5,000).

Weingartz sent Salsco a list of this remaining inventory via email on August 26, 2011. However, Salsco's president did not want to retake the inventory because he believed the products were outdated. Salsco told Weingartz it would refuse to accept return of the inventory in an email dated August 29, 2011. After this exchange, Weingartz continued to hold the inventory, and unsuccessfully attempted to sell it to golf courses until the end of the golfing season in October 2011. At no time did Weingartz attempt to return the equipment to Salsco.

Over a year later, on September 12, 2012, Weingartz sent Salsco a notarized letter, which contained a number of very specific provisions. It listed the undamaged inventory and parts still possessed by Weingartz, invited Salsco to inspect the listed items, and noted that Weingartz purchased the products in the 30 months before August 26, 2011, when Weingartz terminated its business relationship with Salsco. The letter also notified Salsco that Weingartz had appointed a title agency to serve as an escrow agent for funds related to the exchange of the inventory, and

---

[2] Each roller costs approximately $10,000.

included an escrow agreement to that affect. It is unclear if Salsco responded to Weingartz's letter, but Salsco did not take any further action to receive or retake the inventory, nor did Weingartz attempt to send the inventory to Salsco to transfer possession.

## B. PROCEDURAL HISTORY

This action, which Weingartz initiated in November 2012, has a convoluted procedural history, and much of it is not relevant to this appeal. In its initial complaint, Weingartz alleged that Salsco violated FUEA in August 2011, when Salsco refused to repurchase the unsold inventory of its products held by Weingartz.

Both parties eventually moved for summary disposition under MCR 2.116(C)(10). In its motion, Salsco asserted that Weingartz did not have a cause of action under FUEA, because as a "dealer" of utility equipment that wished to terminate its contractual relationship with a "supplier" of utility equipment, FUEA required Weingartz to send Salsco a termination notice via certified mail. Salsco observed that Weingartz admitted it had never sent Salsco any documents via certified mail, and argued that as a result of its noncompliance with the mandatory provisions of FUEA, Weingartz's claim lacked merit. Weingartz disputed Salsco's reading of FUEA and claimed that: (1) the statute permits, but does not require, a dealer to terminate a business relationship with a supplier via certified mail; and (2) its September 2012 letter to Salsco followed the mandates of FUEA and successfully invoked its rights under the statute, which Salsco violated when it refused to repurchase the remaining inventory of rollers and spare parts.

In August 2013, the trial court held that Weingartz failed to follow the mandates of FUEA because it did not send Salsco a termination notice via certified mail. Accordingly, the court granted Salsco's motion for summary disposition. On appeal, Weingartz asks us to reverse the trial court's order and moves for summary disposition,[3] and it makes the same arguments in favor of summary disposition as it did in the trial court.

## III. STANDARD OF REVIEW

A trial court's decision to grant or deny summary disposition is reviewed de novo. *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011). "A summary disposition motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id*. When it decides whether to grant a summary disposition motion, "a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the opposing party." *Id*.

## IV. ANALYSIS

## A. STANDARDS OF STATUTORY INTERPRETATION

---

[3] See n 1 supra.

When it interprets a statute, a court's goal "is to give effect to the Legislature's intent" through focus "on the statute's plain language." *Madugula v Taub*, 496 Mich 685, 696; 853 NW2d 75 (2014) (internal quotation marks omitted). The court must "examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme." *Id*. If the language of a statute is unambiguous, it must be enforced as written. *Fellows v Mich Commission for the Blind*, 305 Mich App 289, 297; 854 NW2d 482 (2014). "It is to be assumed that the legislature had full knowledge of the provisions [it enacted] and [a court has] no right to enter the legislative field and, upon assumption of unintentional omission, supply what [it] may think might well have been incorporated." *Johnson v Recca*, 492 Mich 169, 187; 821 NW2d 520 (2012) (internal citations, punctuation, and quotation marks omitted).

## B. THE FARM UTILITY AND EQUIPMENT ACT

The Legislature enacted FUEA in 1984 to govern "the compensation for or repurchase of certain farm tractors, attachments, equipment, and utility tractors and equipment by certain manufacturers or suppliers[.]" 341 PA 1984. Though the Legislature did not explain its rationale for enacting FUEA in the statute itself, the law "appears to be an attempt to balance the bargaining power of farm equipment dealers, usually small businesses, against that of manufacturers, typically large corporations, by regulating the terms of contracts between dealers and manufacturers." *Cloverdale Equip Co v Manitowoc Engineering Co*, unpublished opinion of the United States Court of Appeals for the Sixth Circuit, issued July 1, 1998 (Docket No. 97-1664, p 4;149 F3d 1182 (table)).[4] To this end, FUEA provides "dealers"[5] of "equipment"[6] with certain rights and remedies against the "suppliers"[7] of that equipment, including: (1) the right to have excess "inventory"[8] repurchased by the supplier (MCL 445.1453); (2) the ability to use

---

[4] Although a decision of a lower federal court that interprets Michigan law is not binding, such a decision may be persuasive. *Adams v Adams*, 276 Mich App 704, 715–716; 742 NW2d 399 (2007).

[5] MCL 445.1452(c) defines "dealer" to mean: "a person engaged in the business of the retail sale of farm tractors and equipment, utility tractors and equipment, or the attachments to or repair parts for that equipment. Dealer includes retail dealers, wholesalers, and distributors that obtain inventory from another person for resale." In turn, MCL 445.1452(h) defines "person" as "a sole proprietorship, partnership, corporation, or any other form of business organization."

[6] MCL 445.1452(d) defines "equipment" as: "motorized machines designed for or adapted and used for agriculture, horticulture, livestock raising, forestry, grounds maintenance, lawn and garden, construction, materials handling, and earth moving." The rollers at issue are "motorized machines designed for or adapted and used for . . . grounds maintenance," which makes them "equipment" under FUEA.

[7] A "supplier" is "a manufacturer, wholesaler, or distributor of farm and utility tractors and farm and utility equipment, or the attachments to or repair parts for that equipment." MCL 445.1452(i).

[8] "Inventory" means "farm tractors, utility tractors, equipment, and accessories for attachments to and repair parts for those tractors and that equipment." MCL 445.1452(f). The lawn rollers at

FUEA as a set of baseline terms in contract negotiations with suppliers (MCL 445.1455); and (3) the right to seek a remedy against a supplier who does not comply with the terms of the broader FUEA (MCL 445.1457).

The key substantive right contained in FUEA—the right of a dealer to have its inventory repurchased by its supplier under the conditions enumerated in the statute—thus begins with MCL 445.1453, which provides:

> If a dealer enters into an agreement[9] with a supplier and the agreement is subsequently terminated, the supplier shall repurchase any inventory of the dealer as provided in this act. The dealer may choose to keep the inventory if there exists a contractual right to do so. [Footnote added.]

Accordingly, for a supplier to be required to repurchase inventory under FUEA, the business agreement between the dealer and the supplier must be terminated. FUEA mandates that termination of an agreement must be effected by one of the methods specified in MCL 445.1454 (if the termination is effected by a dealer) or MCL 445.1457a (if the termination is effected by a supplier). In relevant part, MCL 445.1454 states:

> With or without the prior consent or authorization of a supplier, a dealer may ship all inventory suitable for repurchase to the supplier, not less than 60 days after the supplier has notified the dealer, *or the dealer has notified the supplier by certified mail*, that the agreement between them has been terminated. The supplier shall inspect a dealer's inventory within 30 days of termination of the agreement and designate portions of that inventory to be not returnable under this act. However, such a designation received by the dealer more than 30 days after the termination is not effective. [MCL 445.1454(5); emphasis added.]

The plain language of FUEA thus requires a dealer to terminate an agreement with a supplier in a single, specified way: a notice sent by "certified mail."[10] If such a termination occurs, MCL 445.1454 goes on to describe what sort of inventory the supplier is required to repurchase, and the process by which a supplier must repurchase inventory. Regardless of which

---

issue are included in the definition of "inventory" by virtue of the fact that they are "equipment" under MCL 445.1452(d). See n 6 supra.

[9] MCL 445.1452(e) defines "agreement" to mean: "a written, oral, or implied contract, sales agreement, security agreement, or franchise agreement between a supplier and a dealer by which the dealer is authorized to engage in the business of the retail sale and service, wholesale sale and service, or the distribution of tractors and equipment as an authorized outlet of the supplier or in accordance with methods and procedures provided for or prescribed by the supplier." Here, the parties had an "agreement" for the sale and purchase of lawn rollers, which Weingartz terminated in August 2011.

[10] This is not to say that FUEA prohibits a dealer from terminating a contract in any way the dealer chooses—it simply means that if a dealer wishes to invoke its rights or seek remedies under FUEA, the dealer must terminate its agreement with a supplier by certified mail.

party terminates the contract, termination triggers the beginning of a 60-day holding period, after which a dealer may return the inventory to the supplier for inspection and possible repurchase. MCL 445.1454(5).

In the event that a supplier refuses to accept the returned inventory, MCL 445.1454(7) and (8) provide contingency actions the dealer may take to ensure that inventory valid for repurchase under FUEA is actually repurchased by the supplier. If the supplier refuses to comply with any of the mandates described above, or if it categorically refuses to repurchase the equipment, MCL 445.1457(1) enables a dealer to bring suit against the supplier in the Michigan judiciary.

## C. APPLICATION

Here, it is uncontested that, for purposes of FUEA: (1) Weingartz is a "dealer" of utility equipment; (2) Salsco is a "supplier" of utility equipment; (3) the lawn rollers are "equipment"; and (4) Weingartz and Salsco had an "agreement" to purchase equipment from 2006 to 2011. It is also undisputed that Weingartz terminated the agreement with Salsco by phone and email, and that Weingartz never sent any documents to Salsco via certified mail.

Accordingly, Weingartz failed to comply with the plain language of MCL 445.1454(5), because it did not terminate its agreement with Salsco via certified mail.[11] Its failure to do so means that it may not invoke any of the rights and remedies contained in FUEA, which only apply after termination of an agreement has occurred in the fashion specified by the statute.[12]

Weingartz's protestations that such a result ignores the "broader purpose" of FUEA—which, again, purportedly seeks "to balance the bargaining power of farm equipment dealers . . .

---

[11] Weingartz unconvincingly attempts to avoid the consequences of its failure to properly terminate its agreement with Salsco, by asserting that its September 2012 notarized letter to Salsco complied with MCL 445.1454(8) and thus enables it to demand remedies under FUEA. As noted, MCL 445.1454(8) provides a contingency plan for dealers who have already attempted to return inventory to a supplier. It is only applicable after an agreement has been properly terminated—which, if the dealer terminates the agreement, must be accomplished by certified mail. And, MCL 445.1454(8) also states that, if a dealer chooses to use the contingency option it describes, the dealer must send the documents listed therein via certified mail ("[i]nstead of the return of the inventory to the supplier under the terms of [MCL 445.1454(7)], a dealer may notify a supplier by certified mail that the dealer has inventory that the dealer intends to return").

By its own admission, Weingartz never attempted to return inventory to Salsco, failed to terminate its agreement with Salsco by certified mail, and sent its September 2012 notarized letter to Salsco by regular, not certified mail. MCL 445.1454(8) is thus completely inapplicable to the present case.

[12] We note that FUEA, interestingly, contains no time limitation on when a dealer may terminate an agreement and seek to invoke its rights under the statute.

against that of manufacturers"[13]—are irrelevant. Indeed, at the time this dispute arose, Weingartz may have had other remedies as options against Salsco that were unrelated to FUEA.[14] But if it desired the very specific and attractive benefits afforded by FUEA, Weingartz had to comply with the mandates of the statute, and it did not do so. The plain language of FUEA states that the rights and remedies it provides can only be exercised upon termination of an agreement between a dealer and a supplier, and it explicitly mandates that a dealer must terminate the agreement by certified mail. Weingartz did not comply with this required procedure, and accordingly, its claim must fail.

The trial court therefore correctly granted summary disposition to defendants pursuant to MCR 2.116(C)(10), and its order is affirmed.

/s/ Henry William Saad
/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly

---

[13] *Cloverdale Equip Co* at 4.

[14] We of course do not address such hypothetical contingencies.