# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SURPLUS PROCEEDS FROM SHERIFF SALE.

---

TRADEMARK PROPERTIES OF MICHIGAN, LLC,

      Petitioner-Appellant,

v

COUNTY OF MACOMB,

      Respondent-Appellee,

and

CIVIL STAFFING RESOURCES, LLC,

      Intervenor-Appellee.

UNPUBLISHED
October 11, 2016

No. 327426
Macomb Circuit Court
LC No. 2015-000793-CZ

---

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Petitioner appeals as of right the order granting summary disposition in favor of respondent. We affirm.

This case arises from a dispute between petitioner and respondent regarding the proceeds from a sheriff's sale of a condominium unit in Sterling Heights, Michigan. The mortgagor defaulted, and the undisputed evidence in the record establishes that the balance that the mortgagor owed on the mortgage, including fees, interest, and costs, was $55,030.58. During the sheriff's sale, the mortgagee, CitiMortgage, Inc. (CitiMortgage), made a bid of $20,572.80 as an initial partial credit bid. Petitioner was the highest bidder with a bid of $31,572.80. Following the foreclosure sale, the mortgagor assigned her rights to any surplus proceeds to petitioner. Petitioner then filed a petition in the trial court for the return of surplus proceeds in the amount of $11,000, which was the difference between the initial credit bid and the final bid. Respondent filed a motion for summary disposition, contending that there were no surplus proceeds because the purchase price was less than the amount owed on the mortgage. The trial court agreed with respondent, stating, "The Court does not recognize the total satisfaction under the statute by bid

-1-

from the mortgagor [sic] of less than the mortgage amount . . . ." The trial court entered an order granting summary disposition in favor of respondent.

Petitioner argues that the trial court erred when it granted summary disposition in favor of respondent because the sheriff's sale resulted in a surplus of $11,000. We disagree.

We review de novo a trial court's decision on a motion for summary disposition. *Dell v Citizens Ins Co of America*, 312 Mich App 734, 739; 880 NW2d 280 (2015). In addition, issues of statutory interpretation are reviewed de novo. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85; 878 NW2d 816 (2016). " 'A summary disposition motion under MCR 2.116(C)(10) tests the factual support for a claim and should be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Weingartz Supply Co v Salsco Inc*, 310 Mich App 226, 232; 871 NW2d 375 (2015) (citation omitted). " '[A] court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the opposing party.' " *Id*. (citation omitted).

MCL 600.3252 provides:

> If after any sale of real estate, made as herein prescribed, there shall remain in the hands of the officer or other person making the sale, *any surplus money after satisfying the mortgage on which the real estate was sold*, and payment of the costs and expenses of the foreclosure and sale, the surplus shall be paid over by the officer or other person on demand, to the mortgagor, his legal representatives or assigns, unless at the time of the sale, or before the surplus shall be so paid over, some claimant or claimants, shall file with the person so making the sale, a claim or claims, in writing, duly verified by the oath of the claimant, his agent, or attorney, that the claimant has a subsequent mortgage or lien encumbering the real estate, or some part thereof, and stating the amount thereof unpaid, setting forth the facts and nature of the same, in which case the person so making the sale, shall forthwith upon receiving the claim, pay the surplus to, and file the written claim with the clerk of the circuit court of the county in which the sale is so made; and thereupon any person or persons interested in the surplus, may apply to the court for an order to take proofs of the facts and circumstances contained in the claim or claims so filed. Thereafter, the court shall summon the claimant or claimants, party, or parties interested in the surplus, to appear before him at a time and place to be by him named, and attend the taking of the proof, and the claimant or claimants or party interested who shall appear may examine witnesses and produce such proof as they or either of them may see fit, and the court shall thereupon make an order in the premises directing the disposition of the surplus moneys or payment thereof in accordance with the rights of the claimant or claimants or persons interested. [Emphasis added.]

This issue in this case is whether the $11,000 difference between CitiMortgage's initial credit bid and petitioner's successful bid constituted "surplus money after satisfying the mortgage on which the real estate was sold" under MCL 600.3252. MCL 600.3252 does not define the terms "surplus" and "satisfy." This Court has outlined the rules of statutory interpretation as follows:

"When interpreting a statute, we follow the established rules of statutory construction, the foremost of which is to discern and give effect to the intent of the Legislature. The first step when interpreting a statute is to examine its plain language, which provides the most reliable evidence of [legislative] intent. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. When an ambiguity does indeed exist, we may go beyond the statutory text to ascertain legislative intent. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory." [*Kincaid v Flint*, 311 Mich App 76, 82; 874 NW2d 193 (2015) (citation omitted; alteration in original).]

This Court may consult dictionary definitions for the common and ordinary meaning of a word. *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 508; 866 NW2d 817 (2014). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines the term "surplus," in relevant part, as "the amount that remains when use or need is satisfied." The term "satisfy" is defined, in relevant part, as "to carry out the terms of (as a contract): DISCHARGE," and "to meet a financial obligation to." The plain meaning of the statute, as indicated through the dictionary definitions, is that a surplus is the amount that remains once the mortgagor carries out the terms of the mortgage and meets its financial obligation under the mortgage note. Therefore, under MCL 600.3252, a surplus constitutes the difference between the amount the mortgagor owes the mortgagee, plus the costs and expenses of the foreclosure and sale, and the amount for which the property is sold during the foreclosure sale.

Petitioner's argument on appeal stems from the distinction that it makes between the mortgage and the underlying note. Petitioner contends that MCL 600.3252 refers to a "surplus" as the money remaining after satisfying *the mortgage*, as opposed to the underlying note. Petitioner defines the term "surplus" as " '[a]n amount or quantity in excess of what is needed.' " Petitioner reasons that CitiMortgage's initial credit bid represented the amount it needed to satisfy the mortgage, and any amount above the initial credit bid constituted a surplus. Accordingly, because a mortgage is extinguished upon the foreclosure sale, petitioner contends that there was no amount owing on the mortgage following the sale, and the surplus constituted the difference between the final bid and the initial partial credit bid.

We fail to see how any surplus proceeds could result from the foreclosure sale in this case because the final bid amount was less than the amount owing on the note. Although petitioner contends that this Court should consider CitiMortgage's initial bid in determining the surplus amount, MCL 600.3252 does not refer to the difference between the mortgagee's initial credit bid and the final bid. Petitioner also does not cite any relevant law for the proposition that the statute requires respondent to consider the initial partial credit bid in determining whether there is a surplus. Further, petitioner does not support its contention that the initial credit bid was the amount CitiMortgage needed to satisfy the mortgage. Therefore, petitioner's argument that the surplus is determined by the difference between the initial credit bid and the purchase price is without merit.

Instead, the plain language of the statute directs respondent to consider the difference between the amount owed on the note, plus costs and expenses, and the amount for which the

property sold during the foreclosure sale. Although the statute refers to the amount of the "mortgage" rather than the underlying note, the statute does not differentiate between the mortgage and the note. Instead, the statute refers to "satisfying the mortgage," which indicates the payment must first go toward carrying out the terms of the mortgage and meeting the financial obligation underlying the mortgage. In this case, the uncontroverted evidence in the record established that the amount owing on the mortgage, including fees, interest, and costs, was $55,030.58. The successful bid was $31,572.80. Accordingly, there was a deficiency of $23,457.78. See MCL 600.3252.

Petitioner cites our Supreme Court's decision in *Powers v Golden Lumber Co*, 43 Mich 468, 471; 5 NW 656 (1880), for the proposition that a foreclosure by advertisement extinguishes the *mortgage*, but extinguishes the *note* only to the extent of the proceeds of the mortgage sale. In *Powers*, our Supreme Court stated that "a sale on statutory foreclosure satisfies the debt secured by the foreclosed mortgage to the extent of the proceeds of the sale." *Id*. While the *Powers* Court acknowledged a distinction between a mortgage and the underlying note, the *Powers* decision supports respondent's position because the Court acknowledged that the foreclosure sale only satisfied the debt to the extent of the sale proceeds. Thus, in this case, the foreclosure sale only satisfied the debt to the extent of the sale proceeds, which were less than the amount due on the mortgage note. Accordingly, *Powers* supports respondent's contention that there was a deficiency, rather than a surplus, in this case.

Petitioner's argument attempts to apply the full credit bid rule to this context. Petitioner acknowledges that CitiMortgage did not make a full credit bid in this case. A full credit bid is "a credit bid 'in an amount equal to the unpaid principal and interest of the mortgage debt, together with costs, fees, and other expenses of the foreclosure.' " *Bank of America*, 499 Mich at 88 (citations omitted). The result of a successful full credit bid is that " 'the lender pays the full outstanding balance of the debt and costs of the foreclosure to itself and takes title to the security property, releasing the borrower from further obligations under the defaulted note.' " *Id*. at 88-89 (citations omitted). CitiMortgage did not make a full credit bid in this case because it did not bid the full outstanding balance of the debt, as well as costs, fees, and other expenses of foreclosure. However, petitioner attempts to graft the full credit bid rule onto the partial credit bid that CitiMortgage made in this case by indicating that the partial credit bid extinguished the amount owing on the mortgage. Petitioner states that the partial credit bid "extinguished the Mortgage upon foreclosure sale, but satisfied the Note only to the extent of the foreclosure proceeds." Petitioner's own argument, therefore, establishes that the mortgagor continued to owe money on the note underlying the mortgage. Thus, there were no surplus proceeds in this case because the bid was not a full credit bid and there remained money owing on the defaulted note. See *id*.

Moreover, as noted by respondent, petitioner's interpretation of MCL 600.3252 would lead to an absurd result. " 'Under the absurd-results rule, 'a statute should be construed to avoid absurd results that are manifestly inconsistent with legislative intent . . . .' " *Barrow v Detroit Election Comm*, 301 Mich App 404, 416; 836 NW2d 498 (2013) (citation omitted). Petitioner's interpretation of the statute would result in the return of foreclosure sale proceeds to the assignee of a mortgagor who still owes money to the mortgagee. Although petitioner claims that it is entitled to the surplus proceeds in this case, this is only because the mortgagor assigned her right to the surplus proceeds to petitioner. We construe the statute to avoid this absurd result that

would be manifestly inconsistent with legislative intent, and, instead, we conclude that MCL 600.3252 provides that a surplus constitutes the difference between the amount due on the mortgage note, plus costs and expenses, and the purchase price of the property at the foreclosure sale. If the purchase price of the property is less than the amount due on the mortgage note and costs and expenses, then there is no surplus.

Finally, petitioner contends that respondent lacks evidence regarding the fact that there is a debt and contends that the amount owing on the mortgage is speculative. Although petitioner raised this issue in its response to respondent's motion for summary disposition, petitioner did not provide any supporting evidence to refute respondent's evidence that the mortgagor owed $55,030.58. The evidence attached to the petition confirms that the amount owing was $55,030.58. The sheriff who ran the auction also stated in her affidavit that the amount owing on the mortgage was $55,030.58.

> When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her. [MCR 2.116(G)(4).]

In this case, after respondent presented evidence indicating that the amount the mortgagor owed was $55,030.58, petitioner did not present evidence to the contrary. Accordingly, petitioner failed to establish a genuine issue of material fact with regard to the amount owing on the mortgage note. For the reasons stated above, petitioner's argument on appeal is without merit.

Affirmed. As the prevailing party, respondent may tax costs. See MCR 7.219(A).

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly