*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TRAVERSE CITY AREA CONVENTION
AND VISITORS BUREAU, doing business as
TRAVERSE CITY TOURISM CORP.,

        Plaintiff/Counterdefendant-Appellee,

v

GOLDEN SWAN MANAGEMENT, LLC,

        Defendant/Counterplaintiff-Appellant.

FOR PUBLICATION
February 13, 2025
2:46 PM

No. 365541
Grand Traverse Circuit Court
LC No. 2022-036134-CZ

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant/counterplaintiff, Golden Swan Management, LLC (defendant), appeals as of right the trial court's order granting two motions for summary disposition filed by plaintiff/counterdefendant, Traverse City Area Convention and Visitors Bureau (plaintiff), denying defendant's motion for partial summary disposition, and directing that defendant pay assessments, interest, delinquency charges, costs, and attorney fees under the Community Convention or Tourism Marketing Act, MCL 141.871 *et seq.* (CCTMA). Because the plain language of the CCTMA does not require that a combination of buildings be contiguous or in a single location, and plaintiff substantially complied with the CCTMA's notice requirement, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The CCTMA, enacted as 1980 PA 395 and amended by 1984 PA 59, was intended to promote convention business and tourism within various Michigan municipalities. Under the act, a qualifying nonprofit corporation may establish a convention and tourism marketing program and impose an assessment upon owners of tourist lodging facilities to pay for the marketing program. OAG, 1995-1996, No. 6867 (August 25, 1995).

Plaintiff filed a notice under the CCTMA to establish an assessment district for municipalities "in and around Grand Traverse County," which was approved and became effective on April 1, 1985. Plaintiff originally charged owners of lodging facilities a 2% assessment of

-1-

overnight room charges to pay for marketing activities. By 2021, this assessment had increased to 5%.

On May 22, 2021, Trevor Tkach, plaintiff's president and chief executive officer, sent an e-mail message to Katy Bertodotto, a managing member of defendant, stating that it appeared from defendant's internet site that defendant managed nearly 30 short-term rental units. Tkach noted that the threshold for membership was 10 units, and referred Bertodotto to Whitney Waara, plaintiff's chief operating officer, to "facilitate the onboarding process." Bertodotto asserted in response that the properties defendant managed were individually owned, and that defendant was "legally unable to lock their properties into a contract without their consent." Waara explained that the manager of 10 or more lodging rooms was an "owner" under the CCTMA, managers of 10 or more units were required to participate, and "with this notice, the requirement to begin collecting the assessment is immediate."

Plaintiff subsequently filed this action alleging that defendant was the "owner" of a transient facility, as defined by MCL 141.872(k), because defendant managed a building or combination of buildings that contained 10 or more rooms used in the business of providing lodging to transient guests. Plaintiff alleged that it had demanded payment from defendant on May 25, 2021, but did not receive that payment, and requested that the trial court enter a judgment "for the amount of the assessments due Plaintiff, for all months for which they are delinquent, including the interest and delinquency charges set forth in the act, plus statutory costs, interest and attorney fees," and an order "requiring Defendant to supply its use tax returns to the Plaintiff's accountant."

Defendant then filed its own complaint (hereafter, counterclaim), in a separate case against plaintiff (Case No. 2022-36170-CZ), asserting estoppel by laches and a violation of its equal protection rights.[1] Defendant later amended the complaint to include a request that the trial court declare there was no benefit to defendant sufficient to support an assessment against defendant, and the trial court entered an order consolidating the two cases "for trial purposes and all related discovery thereto."

After filing its counterclaim, defendant moved for summary disposition of plaintiff's complaint under MCR 2.116(C)(8), asserting that under the CCTMA, no assessment may be imposed on the owner of a transient facility until notice of the marketing program has been mailed to the owner by registered or certified mail. In response, plaintiff asserted that it had sent a copy of the marketing notice to defendant by certified mail on April 28, 2022, and that MCL 141.873 refers only to mailing notice of the marketing program at the time that notice of a marketing program is filed with the director for approval. The trial court denied the motion, concluding that "the registered/certified mail requirement of the Act is intended to ensure actual receipt and not to qualify the right to sue on manner of delivery or proof of delivery." Because defendant did not dispute that it had received actual notice, and presented no evidence of prejudice resulting from

---

[1] This complaint is not included in the lower-court file. However, defendant's answer, filed after the two cases were consolidated, indicates that defendant sought a declaratory judgment and alleged estoppel by laches and an equal-protection claim. We refer to this complaint as defendant's counterclaim, because the trial court and the parties treated it, and sometimes referred to it, as a counterclaim.

-2-

the manner of that notice, the trial court ruled that plaintiff had not failed to state a claim on which relief can be granted.

Defendant then moved for summary disposition under MCR 2.116(C)(10), asserting that it was not required to collect or pay assessments under the CCTMA, and that the CCTMA was void for vagueness. Four days after defendant filed that motion, plaintiff filed its own motion for summary disposition pursuant to MCR 2.116(C)(8) and (10), contending that there were "no questions of fact that the Act applies to Defendant and Defendant has been liable to pay the assessment since May 2021." And in a subsequent motion for summary disposition under MCR 2.116(C)(8) and (10), plaintiff asserted that there were "no questions of fact that: 1. The Equitable Doctrine of laches does not bar Plaintiff's claim; and 2. The Equal Protection Clause does not apply to this case."

The trial court concluded that the plain language of the CCTMA supported plaintiff's interpretation: a "facility" may include a combination of buildings under common management, and the CCTMA does not require combinations of buildings to be in the same location, as long as they are located within the assessment district. The trial court therefore granted plaintiff's first motion for summary disposition and denied defendant's request for declaratory relief. The trial court also affirmed its earlier denial of defendant's motion for summary disposition pursuant to MCR 2.116(C)(8), concluding that defendant had adequate notice of the marketing program and did not demonstrate any prejudice resulting from the manner of notice. In addition, the trial court found that the eight-month delay in plaintiff's collection efforts was insufficient to warrant application of the doctrine of laches, that defendant had failed to prove sufficient prejudice to warrant application of laches, and that plaintiff was entitled to summary disposition pursuant to MCR 2.116(C)(8) and (10).

In sum, the trial court denied defendant's motion for partial summary disposition and granted plaintiff's first and second motions pursuant to MCR 2.116(C)(8) and (10). The court ruled that defendant was liable for assessments beginning May 25, 2021, as well as interest, delinquency charges, attorney fees, and court costs incurred in pursuing the assessments, and ordered defendant to submit its use-tax returns for all quarters since May 25, 2021. The court concluded that "[t]his order resolves all outstanding legal issues and closes the case."

Defendant filed a claim of appeal in this Court. One week later, plaintiff moved for entry of judgment in the trial court, explaining that it was able to "estimate" that $227,089.14 was due for delinquent assessments, interest, and delinquency charges, and it had incurred $77,791.76 in costs and attorney fees, for a total due of $304,880.90. Citing MCR 7.203 and 7.208(A), defendant opposed the motion, contending, among other arguments, that once a claim of appeal has been filed, the trial court loses operational jurisdiction over the substance of the appeal and may not amend the judgment without leave of the appellate court, stipulation of the parties, or as otherwise provided by law. Following a hearing, the trial court entered an order holding plaintiff's motion for entry of judgment in abeyance pending the outcome of the motion to dismiss for lack of jurisdiction that plaintiff had filed in this Court.

After the parties filed additional motions in the trial court related to payment of the assessments, the trial court entered an order holding the motions "in abeyance until this case returns from the Court of Appeals (COA Case No. 365541), if at all."

## II. JURISDICTION

We first address plaintiff's argument that this Court lacks jurisdiction over defendant's claim of appeal. Plaintiff moved to dismiss defendant's appeal in this Court, asserting that the trial court's decision and order granting its motions for summary disposition was not a final order appealable as of right because it did not adjudicate all the rights and responsibilities of the parties, namely plaintiff's actual damages or the amount of costs and attorney fees due. This Court denied plaintiff's motion to dismiss "because the claims pleaded in appellee's complaint may properly be considered as only requesting declaratory relief, not entry of a specific monetary judgment, and because the March 30, 2023 order does not appear to contemplate further court proceedings as to determining monetary damages." *Traverse City Convention & Visitors Bureau v Golden Swan Mgt LLC*, unpublished order of the Court of Appeals, entered June 1, 2023 (Docket No. 365541). However, the order was entered without prejudice to plaintiff raising the issue in its brief for consideration by the case call panel. *Id.*[2]

Plaintiff raises the issue again on appeal, explaining that its complaint did not seek declaratory relief, but instead sought a monetary judgment in an unknown amount. Citing *Faircloth v Family Independence Agency*, 232 Mich App 391; 591 NW2d 314 (1998), plaintiff asserts that, in light of its request for a monetary judgment, the trial court's statement that the March 30, 2023 order resolved all outstanding legal issues does not control this Court's jurisdiction. Rather, because the order did not dispose of all the claims and did not adjudicate the rights and liabilities of the parties, this Court lacks jurisdiction under MCR 7.203(A). We agree.

This Court has jurisdiction over an appeal of right from a "final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6) . . . ." MCR 7.203(A)(1). A "final order" is defined as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order . . . ." MCR 7.202(6)(a)(i). The trial court's March 30, 2023 decision and order is not a final order because it does not dispose of plaintiff's claim for entry of a monetary judgment.

In *Children's Hosp of Mich v Auto Club Ins Ass'n*, 450 Mich 670, 671-674; 545 NW2d 592 (1996), the Supreme Court reviewed this Court's decisions in two appeals in which the plaintiffs sought both declaratory relief and money damages, the trial courts entered orders that determined liability but did not include a determination of monetary damages, and this Court dismissed the appeals because the amounts of damages had not been determined. The Supreme Court affirmed, agreeing that the orders in question were not final judgments. *Id.* at 675.

Here it was defendant, not plaintiff, that asserted a claim for declaratory relief. The trial court granted summary disposition in favor of plaintiff on this claim. Although plaintiff's complaint did not request a specific dollar amount as damages, it clearly asserted a claim for a monetary judgment in the amount of delinquent assessments, delinquency charges, interest, costs,

---

[2] This Court also denied plaintiff's motion for reconsideration. *Traverse City Convention & Visitors Bureau v Golden Swan Mgt LLC*, unpublished order of the Court of Appeals, entered June 29, 2023 (Docket No. 365541).

and attorney fees. The trial court's order did not include a determination of this amount. This case is distinguishable from *Children's Hosp* on the ground that the trial court orders in that case contemplated further proceedings to determine the amounts due, *Children's Hosp*, 450 Mich at 671-673, but the trial court's failure to do so here should not transform the March 30, 2023 order into a final order appealable as of right, nor should plaintiff's failure to request a specific dollar amount as damages. Plaintiffs seldom request precise dollar amounts in their complaints, and there is no indication that the plaintiffs in *Children's Hosp* did so. Notably, the March 30, 2023 order states that it resolved all outstanding legal issues. However, the order clearly did not resolve all factual issues.

To this point, in *Children's Hosp*, 450 Mich at 677, the Supreme Court acknowledged that in some cases, the calculation of damages should be postponed pending appellate review, but concluded that "the existence of such a situation is a ground upon which to apply for leave to appeal, not an exception to the rules governing appeals of right." This is such a case. See *City of Highland Park v State Land Bank Auth*, 340 Mich App 593, 608; 986 NW2d 638 (2022). Accordingly, while we find that the March 30, 2023 decision and order of the trial court is not a final order appealable as of right, in the interest of judicial economy, we will exercise our discretion to address defendant's appeal as on leave granted. See *Schultz v Auto-Owners Ins Co*, 212 Mich App 199, 200 n 1; 536 NW2d 784 (1995).

### III. CCTMA – TRANSIENT FACILITY

We now turn to defendant's arguments. Defendant first asserts on appeal that the trial court erred in granting plaintiff's motions for summary disposition because it does not own or manage a "transient facility" under the CCTMA. Specifically, defendant contends that the statutory definition of "transient facility" is unambiguous and refers only to buildings in a single location.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). The trial court granted summary disposition pursuant to MCR 2.116(C)(8) and (10). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim. A trial court reviewing such a motion must accept all factual allegations as true and decide the motion on the pleadings alone. Summary disposition may be granted only when a claim is so clearly unenforceable that no factual development could possibly justify recovery. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint in light of the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). A genuine issue of material fact exists when the record reveals an issue upon which reasonable minds might differ. *Id*. A party seeking summary disposition under MCR 2.116(C)(10) must support the motion with affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3)(b). If the motion is properly supported, the burden shifts to the opposing party to establish that a genuine issue of disputed fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). A reviewing

court must consider the pleadings, admissions, and other evidence in the light most favorable to the nonmoving party. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). The interpretation and application of a statute is a question of law that this Court also reviews de novo. *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013).

Resolution of this appeal requires application of the rules of statutory construction to the CCTMA:

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In construing a statute, this Court should give every word meaning, and should seek to avoid any construction that renders any part of a statute surplus or ineffectual. It is well established that to discern the Legislature's intent, statutory provisions are *not* to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole. Provisions not included by the Legislature should not be included by the courts. [*In re Casey Estate*, 306 Mich App 252, 256-257; 856 NW2d 556 (2014) (quotation marks and citations omitted).]

This Court may not read language into a statute that "is not within the Legislature's intent as derived from the language of the statute." *AFSCME v Detroit*, 468 Mich 388, 400; 662 NW2d 695 (2003).

With the CCTMA, the Legislature determined that the "state can best undertake effective tourism marketing through the coordinated efforts of existing state government agencies in tourism promotion and private convention and tourism promotional bureaus . . . ." MCL 141.871a(1)(d). To further this goal, the act authorizes a bureau[3] to establish a marking program[4] and an assessment district[5] by filing a marketing program notice with the director. MCL 141.873(1). A marketing program and assessment take effect on the first day of the month that is 30 days after the director certifies approval by a majority of the owners of transient facilities in the assessment district. MCL 141.873a(3). Effective on that date, "each owner of a transient facility in the assessment district shall be liable for payment of the assessment . . . ." MCL 141.875(1).

This Court has interpreted the CCTMA sparingly since its passage, and none of these decisions offers guidance on whether a combination of buildings must be contiguous or in a single

---

[3] A "bureau" is "a nonprofit corporation existing to promote convention business or tourism within this state or a portion of this state." MCL 141.872(e).

[4] A "marketing program" is "a program established by a bureau to develop, encourage, solicit, and promote convention business or tourism within this state or a portion of this state within which the bureau operates." MCL 141.872(g).

[5] An "assessment district" is "a municipality or combination of municipalities as described in a marketing program. A combination of municipalities is not required to be contiguous." MCL 141.872(b).

location to qualify as a transient facility.  The CCTMA, however, plainly defines a "transient facility" as "a building or combination of buildings under common ownership, operation, or management that contains 10 or more rooms used in the business of providing dwelling, lodging, or sleeping to transient guests, whether or not membership is required for the use of the rooms." MCL 141.872(n).  Nothing in that definition or in the text of the CCTMA as a whole suggests that the Legislature intended to limit the definition of "transient facility" to a combination of buildings that must be contiguous, and defendant's arguments to the contrary are unconvincing.

The act explicitly provides that the definition of "transient facility" "does not include a college or school dormitory, a hospital, a nursing home, or a facility owned and operated by an organization qualified for an exemption from federal taxation under section 501(c) of the internal revenue code." *Id*.  Defendant acknowledges that the statutory definition of transient facility refers to a "combination of buildings," but, applying the doctrine of *noscitur a sociis*,[6] defendant contends that the use of the words college, dormitory, or hospital "leads to the conclusion that the Legislature intended for 'transient facility' to apply to a collection of buildings or structures in a single, contiguous area that are related—not unrelated homes in multiple separate locations."  But there is no indication that the legislative exclusion of these buildings was related to whether there were multiple buildings or the location of those buildings.  Rather, the overall purpose of the CCTMA is tourism marketing.  Reading this language in light of the statute's context and overall purpose, the obvious conclusion is that dormitories, schools, hospitals, and nursing homes were excluded simply because they are unrelated to tourism.

Defendant's argument that the CCTMA's definition of "assessment district" supports its proposed definition of "transient facility" is similarly unavailing.  The act defines "assessment district" as a "municipality or combination of municipalities as described in a marketing program. A combination of municipalities is not required to be contiguous."  MCL 141.872(b).  Defendant reasons that the omission of similar contiguity language in the CCTMA's definition of "transient facility" indicates that the Legislature intended that a combination of buildings must be contiguous. "Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011).  But an "assessment district" and a "transient facility" are unrelated and independent entities.  Thus, whether a combination of municipalities need not be contiguous is irrelevant to the question whether a collection of buildings must be contiguous.  "Contiguous" means "[t]ouching at a point or along a boundary." Black's Law Dictionary (12th ed).  If the Legislature had intended the buildings to be contiguous, it would simply have explicitly stated as much.

Nor does the statutory requirement that a marketing-plan notice must be sent to "the transient facility of the owner," MCL 141.875(5), support the conclusion that buildings which are part of a "transient facility" must be contiguous.  In its entirety, MCL 141.875(5) provides that "[t]he owner of a transient facility shall not be liable for payment of an assessment until a marketing program notice has been mailed to the transient facility of the owner pursuant to section

---

[6] "This doctrine stands for the principle that a word or phrase is given meaning by its context or setting." *Tyler v Livonia Pub Sch*, 459 Mich 382, 391; 590 NW2d 560 (1999).

3." However, § 3 provides that the notice must be sent "to each owner of a transient facility located in the assessment district specified in the notice, in care of the respective transient facility." MCL 141.873(7). Thus, read in combination, § 5(5) and § (3)(7) simply require that the owners of transient facilities receive notice sent to a transient facility, and do not define "transient facility."

Citing MCL 141.878(1), defendant also asserts that the CCTMA, when viewed as a whole, allows an owner to own or manage more than one transient facility in an assessment district. Defendant reasons that, under the trial court's interpretation of the CCTMA then, every owner or manager with buildings in more than one location would be deemed to have only one transient facility, thus conflicting with other portions of the CCTMA. This reasoning is also faulty. There is nothing in our or the trial court's interpretation that would prohibit an owner or manager from operating more than one transient facility in an assessment district.

Because the plain language of the CCTMA does not require that "transient facilities" be located on a single property or in a single location, the trial court correctly ruled that defendant was required to pay assessments under the act. To interpret the CCTMA to require a combination of buildings to be contiguous or in a single location improperly reads language into the CCTMA that "is not within the Legislature's intent as derived from the language of the statute." *AFSCME*, 468 Mich at 400. As the plain language of the CCTMA is clear and unambiguous on this point, we need not look beyond that language to determine the meaning of "transient facility." Accordingly, we decline to address defendant's arguments using legislative history and other means to ascertain legislative intent.

## IV. CCTMA - NOTICE

Defendant also argues that even if it was considered a manager of a "transient facility," assessments could not be levied against it before the date plaintiff mailed the marketing program notice by certified mail—April 28, 2022. The trial court held that under *Pi-Con, Inc v AJ Anderson Constr Co*, 435 Mich 375; 458 NW2d 639 (1990), strict compliance was not required, and because it was undisputed that defendant had actual notice, compliance with the statute was satisfied. We agree with the trial court.

MCL 141.875(1) provides that, "[u]pon the effective date of an assessment under [MCL 141.873a], each owner of a transient facility in the assessment district shall be liable for payment of the assessment . . . ." MCL 141.875(5) states, "The owner of a transient facility shall not be liable for payment of an assessment until a marketing program notice has been mailed to the transient facility of the owner pursuant to [MCL 141.873]." Under MCL 141.873(7), "[s]imultaneously with the filing of the marketing program notice with the director, the bureau shall mail a copy of the notice, by registered or certified mail, to each owner of a transient facility located in the assessment district specified in the notice, in care of the respective transient facility."

In *Pi-Con*, 435 Mich at 378-379, 387, the Supreme Court examined the public works bond act (PWBA), MCL 129.207, which required notice by certified mail before a general contractor could have a right of action upon a public works payment bond, and held that "the certified mail requirement [was] intended to ensure actual receipt and not to qualify the right to sue on a manner of delivery or proof of delivery," thus "the plaintiff ha[d] a right to prove actual receipt of notice by a preponderance of the evidence." In so holding, the Court emphasized that the PWBA's notice

provision requires notice by certified mail, and not certified mail, return receipt requested, which the Court found significant:

> Had the Legislature desired a procedure whereby it could conclusively be established that [the] defendant received [the] plaintiff's notice, it would have required notice be sent certified mail with return receipt requested. Certified mailing alone does not guarantee the retention of records of delivery, because the United States Postal Service retains such records for only two years. By requiring notice be sent return receipt requested, on the other hand, the Legislature could have ensured that all claimants on bonds always had proof of delivery. . . . The statute at hand, however, regulates the manner of delivery, not the method of proof of delivery. [*Pi-Con*, 435 Mich at 386.]

The same rationale applies here. First, here as in the PWBA, the statutory notice provision does not require notice be provided by certified mail, return receipt. Instead, it requires the lesser certified or registered mail, MCL 141.873(7), which under *Pi-Con* indicated a legislative intent that notice be provided, not that there exists proof of actual notice, *Pi-Con*, 435 Mich at 386-387. Second, as in *Pi-Con*, the notice provision at issue was a condition that had to be complied with, yet still the Court held that strict compliance was unnecessary, as long as actual written notice was timely provided and it was proven by a preponderance of the evidence that actual notice existed. See *id*. at 382.[7] And here, because it is undisputed that defendant had actual notice of the assessment requirements, the trial court properly denied defendant's motion for summary disposition as to notice.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates

---

[7] We recognize, as defendant points out, that other decisions have held that a notice provision must be strictly complied with in order for a party to lawfully bring suit under the statute. See, e.g., *Weingartz Supply Co v Salasco, Inc*, 310 Mich App 226, 236-237; 871 NW2d 375 (2015). We also realize that since *Pi-Con*, the Supreme Court has held that "substantial compliance" with certain notice provisions is not sufficient absent statutory language indicating that. See, e.g., *McCahan v Brennan*, 492 Mich 730, 746-747; 822 NW2d 747 (2012), *Jakupovic v City of Hamtramck*, 489 Mich 939 (2011), and *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 219; 731 NW2d 41 (2007). But we are an error correcting court, and we see what was at issue in *Pi-Con* as being most analogous to the statutory notice provision within MCL 141.873(7).